**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

FRANK TADDEO; AMELIA TADDEO,

    Plaintiff,

v.

AMERICAN INVSCO CORPORATION, et al.,

    Defendants.

Case No. 2:12-cv-01110-APG-NJK

**ORDER ON MOTIONS**

(Dkt. ##200, 201, 202, 203, 209)

    This case is one of several brought by people who bought condominiums from defendants and claim they were never told about various defects in the project. Here, the plaintiffs are Frank and Amelia Taddeo.

    After purchasing their condominium and discovering the defects, the Taddeos sued defendants, who are various individuals and companies involved in the sale. When the matter finally reached trial, only four claims remained: two for breach of contract, one for conversion, and one for fraudulent concealment.

    The jury found for the Taddeos and against two of the defendants: Koval Flamingo LLC ("Koval") and American Invsco Corporation ("Invsco"). The jury's verdict was as follows:

(1)    Koval breached the Condominium Purchase Agreement ("CPA") by failing to provide access to the plaintiffs' home, but plaintiffs suffered no damages;

(2)    Koval breached the CPA by failing to pay rent to plaintiffs, awarding plaintiffs $68,000.00 in damages;

(3)    Koval and Invsco fraudulently concealed the defective floor issue, awarding $304,424.00 in damages; and,

(4)    Koval and Invsco are liable for punitive damages in the amount of $1 million each.[1]

---

[1] (Dkt. #185.)

Defendants Invsco and Koval now file renewed motions for judgment as a matter of law or, in the alternative, for a new trial.

## I.     LEGAL STANDARDS

### A.     Motion for judgment as a matter of law under Fed. R. Civ. P. 50(b)

The sufficiency of the evidence under a Fed. R. Civ. P. 50(b) motion is an issue of law to be determined by the judge. The primary consideration is whether the evidence in the record could properly support the verdict.[2] I "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor."[3] Further, I may not make credibility determinations or weigh the evidence.[4] "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."[5]

"Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion."[6] Thus, a party cannot "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion."[7] The rule that in a renewed motion a party can move only on grounds first raised in a pre-verdict motion "is a harsh one."[8]

---

[2] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

[3] *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir.2006); *E.E.O.C. v. Go Daddy Software, Inc.,* 581 F.3d 951, 961 (9th Cir. 2009).

[4] *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *E.E.O.C.,* 581 F.3d at 961.

[5] *E.E.O.C.,* 581 F.3d at 961 (quotation omitted).

[6] *Id.*

[7] *Freund v. Nycomed Amersham,* 347 F.3d 752, 761 (9th Cir.2003); *see also Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir.1990) ("Judgment notwithstanding the verdict "is improper if based upon grounds not alleged in a directed verdict [motion]."); Fed.R.Civ.P. 50 advisory committee's notes to the 2006 amendments ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.").

[8] *E.E.O.C.,* 581 F.3d at 961.

**B.      Motion for a new trial under Fed. R. Civ. P. 59**

"The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court."[9]  In exercising this discretion, I may reopen a judgment, hear additional testimony, and amend (or make new) findings of fact and conclusions of law.[10] But one limitation on this discretion is that a new trial may be granted only if the verdict is contrary to the clear weight of the evidence.[11]

I must proceed carefully and "cannot" substitute my "evaluations for those of the jurors."[12]  The grant of a motion for a new trial premised upon a verdict contrary to the "clear weight of the evidence" is a "rare occurrence" and ought to be considered with great restraint.[13] In the case of remittitur, the court must offer the verdict-winning party the opportunity to agree to the reduction of the award or to choose a new trial.[14]

**II.     DISCUSSION**

Koval and Invsco seek to overturn the jury's verdict based on the following arguments:

1.  There is insufficient evidence that Invsco's corporate entity was involved in the fraud against plaintiff.

2.  There is insufficient evidence to support plaintiffs' contract claims.

3.  There was insufficient evidence to support several of the elements of plaintiffs' fraudulent concealment claim.

4.  Koval was entitled to have the jury make findings in the verdict form about agency principles governing punitive damages.

---

[9] *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010). *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 433 (1996).

[10] *Defenders of Wildlife v. Bernal,* 204 F.3d 920, 928-29 (9th Cir. 2000).

[11] *Union Oil Co. of California v. Terrible Herbst,* 331 F.3d 735, 743 (9th Cir. 2003).

[12] *Id.* at 743.

[13] *Raedle v. Credit Agriole Indosuez*, 670 F.3d 411, 418-419 (2d Cir. 2012).

[14] *See Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 65-66 (1966); *Hetzel v. Prince William Cnty.,* 523 U.S. 208, 211 (1998).

   5. Juror misconduct occurred.

   6. Plaintiffs' counsel engaged in misconduct.

   7. The punitive damages award was excessive.

I address each of these arguments in turn.

  **A.** **Whether the verdict against Invsco should be overturned because of a lack of evidence specifically implicating it**

  In its renewed motion, Invsco argues there was insufficient evidence submitted at trial to show which Invsco corporate entity was liable to plaintiffs. Specifically, Invsco argues there was evidence only that the "Invsco brand name" was involved in the fraud, but insufficient evidence that the distinct defendant entity American Invsco *Corporation* was involved. This argument fails because (1) Invsco waived this argument by not raising it before, and even if it had raised the issue, (2) there is sufficient evidence to support the jury's verdict against Invsco's specific corporate entity.

  The first problem is that Invsco made this argument for the first time in its renewed motion. At the close of plaintiffs' case, defendants moved for judgment as a matter of law. In support of that motion, Koval and Invsco argued (1) there was no actual proof of a defective condition in the condo;[15] (2) there was no evidence defendants had a special relationship or duty to disclose the defects to plaintiffs;[16] (3) there was no evidence of reliance;[17] and, (4) there was insufficient evidence to support an award of punitive damages.[18] Invsco never argued in its original motion that there was insufficient evidence implicating its distinct corporate entity "American Invsco Corporation."

  Invsco argues that it may raise new legal arguments that it did not raise in its pre-verdict Rule 50(a) motion. But it does not provide any authority to support this position. As explained at

---

[15] (Dkt. #198 at 90-100.)

[16] (*Id.*)

[17] (*Id.*)

[18] (*Id.*)

Page 4 of 18

1  length above, Federal Rule of Civil Procedure 50(b) permits me to consider only arguments first
2  raised in the moving party's pre-verdict motion—and this rule is a "harsh one."[19] The only case
3  Invsco cites, a D.C. Circuit case, addresses the very different situation where a party raises a legal
4  issue in a denied summary judgment motion.[20] The caselaw in this circuit, and elsewhere,
5  strongly indicates that a party may not raise new post-verdict legal or factual arguments when it
6  failed to first raise them in its pre-verdict Rule 50(a) motion.[21]

7  Even if Invsco is right that it may bring new legal arguments despite not raising them
8  prior to the verdict, it did not previously raise its factual arguments. Invsco's factual argument is
9  that there is no evidence implicating its specific corporate entity American Invsco Corporation
10 within the Invsco brand. Invsco did not raise this factual dispute in its pre-verdict motion.[22] It
11 argued only that there was a lack of evidence about whether Invsco was a land seller or had a
12 special duty to disclose information to plaintiffs.[23]

13 Even if Invsco had not waived these arguments, there would still be sufficient evidence to
14 support the jury's verdict against it. Invsco argues that the evidence that implicated the Invsco
15 brand could have related to Invsco entities other than American Invsco Corporation. But there
16 was sufficient evidence about American Invsco Corporation's involvement for the jury to
17 reasonably infer that all of the evidence about the Invsco brand related to American Invsco
18 Corporation. For example, Amelia Taddeo testified that Mr. Mackenzie was one of the key
19 agents she interacted with during and after her condominium purchase.[24] Mrs. Taddeo also

---

[19] *E.E.O.C.,* 581 F.3d at 961; s*ee also Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc.,* 554 F. App'x 176, 185 (4th Cir. 2014).

[20] *See Feld v. Feld,* 688 F.3d 779, 782 (D.C. Cir. 2012).

[21] *See E.E.O.C.,* 581 F.3d at 961; s*ee also Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc.,* 554 F. App'x 176, 185 (4th Cir. 2014*); Price v. City of Charlotte,* N.C., 93 F.3d 1241, 1249 (4th Cir. 1996) (requiring that the pre-verdict Rule 50(a) motion address both "legal" and "factual" arguments raised in a post-verdict renewed motion).

[22] (Dkt. #198 at 88-100.)

[23] *Id.*

[24] (Dkt. #196 at 124-147.)

testified that Mackenzie worked for American Invsco Corporation as a vice president, that American Invsco Corporation was listed on Mackenzie's business card, and that a check she received for rent was drawn on an account with American Invsco Corporation's address.[25] Mrs. Taddeo testified that she agreed to purchase the property in part because she was told by defendants' agents that American Invsco—"a 4 billion dollar company"—was involved in the sale.[26] It was Invsco's obligation at trial to object to any improper testimony or evidence and explain to the jury why the evidence did not point to American Invsco Corporation. Invsco has failed to establish that the jury's verdict should be overturned on this ground.

### B. Challenges to the jury's verdict of breach of contract against Koval

At trial, the jury awarded plaintiffs $68,000.00 for Koval's failure to pay rent to plaintiffs under the CPA. Koval argues that no admissible evidence was offered that the CPA obligated Koval to pay rent. I disagree. Koval primarily argues that I improperly admitted a lease document that Koval believes constitutes hearsay. But the jury was presented with sufficient other evidence showing that Koval agreed to pay the plaintiffs rent as part of the CPA.

First, the Taddeos testified that, from the earliest negotiations with defendants, they understood that defendants agreed to pay them rent as part of the CPA. They testified that they confirmed Koval's obligation to pay rent with Koval's agent Rebekah Desmet.[27] Desmet went so far as to memorialize the Koval's rent obligation in writing.[28] Koval also took several acts that corroborate that the parties agreed Koval would pay rent to the Taddeos. For example, Koval or its agents maintained access to the condo; the Taddeos did not even have keys.[29] The plaintiffs

---

[25] (*Id.* at 100-47.)

[26] (*Id.* at 65.)

[27] (Dkt. #197 at 235-37; Dkt. #197 at 193.)

[28] (*Id.* at 127.)

[29] Testimony indicated that Ms. Desmet had the keys. (*Id.*) The parties do not appear to dispute that there was sufficient evidence for the jury to find that Ms. Desmet was Koval's agent.

had to evict Koval in order to retake possession of their condo.[30] There was evidence that Koval made several payments to the Taddeos in performing Koval's alleged rent obligation.[31] All of this evidence supports the jury's finding that Koval promised to pay the Taddeos rent as part of the overall sale—and breached that obligation by stopping these payments.

Koval also seems to argue any negotiations or agreement that its agent had after the written contract was signed would be inadmissible under the parol evidence rule. Koval makes no effort to apply the parol evidence rule to the facts of this case, but even if it had the argument fails. The parol evidence rule applies only to "negotiations and agreements" made prior to a final written contract.[32] The rationale of the rule is that any prior negotiations or documents are merged into the later, written contract.[33] Further, the parol evidence rule does not bar evidence that the parties intended additional terms to be added to the original written document—so long as the additional terms do not contradict the written terms of the contract.

Here, the parties do not dispute that Desmet gave plaintiffs the disputed document after the CPA was signed. Additionally, Koval's agreement to pay the Taddeo's rent is consistent with the CPA's written terns. The CPA mentions an existing lease, and the evidence at trial could be used by a reasonable jury to find that the parties intended the condominium sale to include Koval's obligation to pay plaintiffs rent.[34] Koval has therefore failed to establish that the jury's verdict on the breach of contract claim should be overturned on this ground.

---

[30] (Dkt. #197 at 127.)

[31] (Dkt. #196 at 110.) Koval points to evidence indicating that Koval was sending payments to plaintiffs because another tenant was forwarding payment through Koval. But this does not explain why this tenant would not have remitted directly payment to the plaintiffs if Koval had taken on no obligation to pay the plaintiffs rent. Regardless of whether I agree with the jury, there was sufficient evidence for them to find that the parties to the CPA agreed that Koval would be obligated to pay rent to the Taddeos.

[32] *Daly v. Del E. Webb Corp.,* 96 Nev. 359, 361, 609 P.2d 319, 320 (1980).

[33] *Id.*

[34] *See also Lumbermans Acceptance Co. v. Secured Investment of Marysville, Ltd.,* 712 F.2d 1334 (1983) (noting that multiple related contracts should be treated as one general transaction).

**C.   Challenges to the jury's verdict for fraudulent concealment**

Defendants argue the jury's fraud verdict is defective for two reasons: (1) I improperly admitted a key piece of evidence, and (2) there was insufficient evidence to support the elements of a fraud claim.

### a.   Admission of the key piece of evidence

Defendants first argue that I erred by admitting into evidence a July 24, 2006 letter from GC Wallace.[35]  This letter stated that if tile was installed in any of the condominiums in plaintiffs' building, the floor's structure would be overloaded.[36]  The letter memorialized a report that was commissioned by Koval and addressed to Invsco.[37]

At trial, defendants argued this letter was both hearsay and an improper attempt to "back-door" expert testimony without complying with Federal Rule of Evidence 702.  I overruled defendants' objection and admitted the letter for the purpose of proving that defendants were aware of its contents—therefore neither the hearsay rules nor Rule 702 was implicated.[38]

Koval fails to provide legal authority or analysis to support its arguments about the letter's admissibility.[39]  Koval fails to explain how plaintiffs allegedly used the letter as proof of the matters asserted in the letter.  Koval also fails to provide any authority or analysis explaining why the Wallace letter—admitted to show what the recipients were on notice of—should be analyzed under Federal Rule of Evidence 702.  The letter was properly admitted.  Koval has not shown that admission of this letter was error warranting a new trial or judgment as a matter of law.

---

[35] (Dkt. #180.)

[36] (Dkt. #197 at 203.)

[37] *Id.*

[38] (Dkt. #198 at 10.)

[39] *See* L.R. 7-2(d).

### b. Whether there is sufficient evidence to support the jury's fraudulent concealment verdict

Defendants next contend there was insufficient evidence at trial to support a number of the elements of plaintiffs' fraud claim. Plaintiffs had to prove six elements to establish fraudulent concealment:

(1) the defendant assumed the responsibility to give information;

(2) the defendant concealed or suppressed a material fact;

(3) the defendant was under a duty to disclose the fact to the plaintiff;

(4) the defendant intentionally concealed or suppressed the fact with the intent to induce the plaintiff to act or refrain from acting in a manner different than the plaintiff would have had she known the truth;

(5) the plaintiff was unaware of the fact and would not have acted as she did had she known of the concealed or suppressed fact; and

(6) the concealment or suppression of the fact caused the plaintiff to sustain damage.[40]

Defendants argue the fraud verdict should be thrown out because there is no "real-world" evidence of "any defect at Plaintiffs' unit."[41] But defendants have failed to provide any authority or analysis suggesting that plaintiffs were required to prove their condominium in fact contained a defect. Plaintiffs' fraud claim does not turn on whether defendants failed to provide a structurally sound unit; it turns on whether defendant concealed from plaintiffs a material fact (i.e., a fact that may have impacted their decision to complete the purchase of the condo).

The Wallace letter was a report (commissioned by Koval) indicating there was a potential flooring defect with the plaintiffs' condo. There is evidence both Invsco and Koval were aware of this letter.[42] Whether the letter was accurate or not, the jury was within its rights to find that

---

[40] Nev. Jury Instruction 10FR.4; *Dow Chemical Co. v. Mahlum*, 970 P.2d 98, 110 (Nev. 1998).

[41] (Dkt. #203.)

[42] The letter was addressed to Invsco and commissioned by Koval. A reasonable jury could infer both parties had notice. Witness Robert Vance also testified about a report that an

Page 9 of 18

the existence of this letter (discussing a potential defect in the condo plaintiffs were purchasing) was a material fact that should have been disclosed to plaintiffs.[43]

Defendants next argue there was insufficient evidence that they had a duty to disclose material facts to plaintiffs. "A duty to disclose arises 'where the defendant alone has knowledge of material facts which are not accessible to the plaintiff.'"[44] Additionally, a "special relationship" between the parties, such as a land seller-buyer relationship, may trigger the duty to disclose.[45] Crucially, the "duty to speak does not necessarily depend on the existence of a fiduciary relationship. . . . It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence."[46]

Koval's argument on this point fails. As the condo seller and as one of only a few entities (along with Invsco) that knew of the letter, it had a duty to disclose. Similarly, although it may not have been the direct condo seller, there was sufficient evidence introduced at trial to show that Invsco negotiated the sale and had knowledge of the Wallace letter's content. Plaintiffs imposed confidence in Invsco as an agent negotiating the sale, and Invsco knew of this confidence. There is thus sufficient evidence to support the jury's conclusion that Invsco knew of the potential defect, knew plaintiffs could not discover it on their own, and thus fraudulently omitted it during the sale.

---

Invsco employee had received. Again, a reasonable jury could find this testimony corroborated that defendants were aware of the letter and its contents. (Dkt. #198 at 50.)

[43] In addition, other evidence was offered from which the jury could reasonably find the defendants suspected the floors were defective. For example, testimony was offered that the plaintiffs' homeowner's association commissioned a second report from another engineering group in 2010, which also concluded that the floors in the condominiums were overloaded and defective. (*Id.* at 66)

[44] *Epperson v. Roloff*, 719 P.2d 799, 804 (Nev. 1986) (quotations omitted).

[45] *Mackintosh v Jack Mathews & Co.,* 855 P.2d 549, 553-54 (Nev. 1993); *Nev. Power Co. v. Monsanto Co.,* 891 F. Supp. 1406, 1416 (D. Nev. 1995) Silva v. Stevens, 156 Vt. 94, 589 A.2d 852 (1991).

[46] *Mackintosh,* 855 P.2d at 553-54.

Defendants next argue there is no evidence that not disclosing the letter caused any damages. But plaintiffs' testimony indicates that they would not have purchased the condo had they known of the Wallace letter, and that they could not sell the property due to this potential defect.[47] This is sufficient evidence to support causation.

Defendants finally contend that the $304,424.00 jury award is not properly tied to plaintiffs' actual damages caused by the fraud. Defendants point out that this award equals the plaintiffs' down payment on the condo, and because there is no evidence the down payment is a damage caused by the fraud the award is improper. They argue that the proper measure of damages for fraudulently concealing the flooring issue would be the resulting diminution in the condominium's value.

The Nevada Supreme Court has held that a plaintiff may simultaneously sue for fraudulent inducement and breach of contract.[48] The Court reasoned that fraudulently inducing a contract and breaching that contract are distinct wrongs with distinct damages—and there is no reason why a plaintiff should not be permitted to collect on both simultaneously.[49]

Nevada courts recognize three main theories of fraud damages.[50] First, a party who was fraudulently induced to enter a contract can seek to rescind it and be put into the position it would have been had it never entered the contract.[51] Second, a defrauded party may be able to recover the "benefit of the bargain," that is, the value of what he would have received had the

---

[47] (Dkt. #197 at 60-70.)

[48] *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.,* 120 Nev. 277, 288, 89 P.3d 1009, 1017 (2004) ("[C]auses of action for fraud in the inducement and breach of contract may be pursued as distinct claims with separate and consistent remedies.").

[49] *Id.*

[50] *Davis v. Beling*, 128 Nev. Adv. Op. 28, 278 P.3d 501, 513 (2012).

[51] *Butwinick v. Hepner,* No. 56303, 2014 WL 3784111, at *1 (Nev. July 30, 2014) (discussing requirements for rescinding a contract based on fraudulent inducement).

Page 11 of 18

representations been true, less what he actually received.[52] Finally, "the defrauded party [can] recover what he has lost 'out of pocket.'"[53]

Rescission is foreclosed to the plaintiffs here. Under Nevada law, parties must elect to rescind within a reasonable time after discovering fraud.[54] Here, years after they discovered the defendants' fraudulent concealment, plaintiffs have still not elected to rescind.[55] Rescission also requires the factfinder to determine the reasonableness of any delay, which the jury did not do in this case. I therefore cannot allow rescission.

Plaintiffs also cannot recover under the benefit of the bargain theory because they presented no evidence of the value they would have received had defendants not concealed the flooring defect.[56]

But there is sufficient evidence to support the jury's damages award under an out-of-pocket damages theory. Plaintiffs testified that they would not have purchased their condominium had they known of the flooring issues.[57] The jury could reasonably believe that the plaintiffs would therefore not have made their down payment had they known of the defects. The plaintiffs also testified that they were unable to sell their home for any other value.[58] There is

---

[52] *Randono v. Turk,* 86 Nev. 123, 130, 466 P.2d 218, 222–223 (1970).

[53] *Collins v. Burns,* 103 Nev. 394, 398, 741 P.2d 819, 822 (1987).

[54] *Butwinick,* No. 56303, 2014 WL 3784111, at *1 (reversing rescission because lower court did not make factual findings about whether plaintiff's delay in rescinding was reasonable); *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n,* 113 Nev. 393, 403, 935 P.2d 1154, 1161 (1997).

[55] Indeed, the plaintiffs continue to affirm the contract by suing for breach of it.

[56] The defendants argue that plaintiffs' fraud damages award is improper because there is no evidence of the diminution of the condominium's value—in other words, plaintiffs have not proven their expectation damages. But defendants ignore that Nevada law allows plaintiffs to recover their out-of-pocket costs when they are unable to prove expectation damages.

[57] (Dkt. 198 at 65-68.)

[58] (*Id.*) In fact, plaintiffs testified that they lost the condominium in part because they were unable to sell it given the floor defects. This is further evidence the jury could rely upon to determine that plaintiffs suffered damages in the amount of their full down payment. If plaintiffs lost their home and down payment because of defendants' fraud, plaintiffs' out-of-pocket down payment was clearly a direct damage of the fraud.

therefore sufficient evidence to support the jury's finding that the Taddeos' down payment was a damage directly caused by defendants' fraudulent concealment.

### D. Whether defendants were entitled to vicarious liability instructions in the verdict form

Before trial, Koval requested that the jury be required in the verdict form to address concepts from Nevada Revised Statute § 42.007. That statute sets forth the elements a plaintiff must prove to hold an employer liable for punitive damages based on an employee's conduct. I declined Koval's request because it failed to provide any authority to support its position that its proposed language was supported by the case law. In its renewed motion, Koval again argues it was entitled to additional language in the verdict form about "vicarious liability" concepts related to punitive damages. There are several problems with Koval's argument.

First, Koval provides no authority suggesting that § 42.007 applies to the principal-agent relationship. Koval simply cites to the statute (which explicitly applies to employer/employee relationships) and two employment cases with little analysis or explanation of why the statute should apply outside of the employment context stated in the statute.[59] The Nevada legislature chose to confine this statute to the employment context, and I see no reason to extend it farther.

Second, Koval has failed to articulate how it has been prejudiced or how the jury was misled by the verdict form as it is written, and Koval has failed to articulate what language should have been added to the verdict form. This is especially important given that Koval did not request additional jury instructions on this topic. I fail to see how including vicarious-liability concepts in the verdict form would have cured any confusion when the instructions did not address them.

Finally, the verdict form makes clear that the jury awarded punitive damages against Koval based on its own acts, not under an agency theory. The verdict form's questions relating to

---

[59] *See* NRS § 42.007; *Smith's Food & Drug Centers, Inc. v. Bellegarde,* 114 Nev. 602, 608, 958 P.2d 1208, 1212 (1998) *overruled by Countrywide Home Loans, Inc. v. Thitchener,* 124 Nev. 725, 192 P.3d 243 (2008).

1  punitive damages did not refer to any sort of agency liability.  The verdict form asked the jury to
2  mark each defendant who "committed fraudulent concealment."[60]  The jury marked both Koval
3  Flamingo, LLC and American Invsco Corporation.[61]  The jury then marked that Koval and Invsco
4  "engaged in oppressive or malicious conduct."  The form next states that, "for the Defendant(s)
5  you marked . . . who engaged in oppressive or malicious conduct as to the Plaintiffs, indicate
6  what amount of punitive damages, if any, you award to the Plaintiffs."[62]  The jury specifically
7  awarded $1 million in punitive damages against Koval and Invsco separately.[63]  This language
8  makes clear that the jury could award punitive damages against Koval based only on Koval's own
9  actions, not the actions of an agent.  The verdict form leaves little doubt that the jury awarded
10 punitive damages against Koval for its own acts, not the acts of an agent.

### E. Allegations of juror misconduct

Defendants argue that one of the jurors engaged in misconduct warranting a new trial because he accessed defendant DeSmet's "LinkedIn" internet page during the trial.[64]  Defendants argue that this demonstrates that the juror improperly conducted out-of-court research about the defendants.  I have wide discretion in deciding whether jury misconduct warrants a new trial.[65]  In wielding this discretion I look to the "content of the allegations, including the seriousness of the alleged misconduct or bias, and the credibility of the source."[66]

---

[60] (Dkt. #184.)

[61] (*Id.*)

[62] (*Id.*)

[63] (*Id.*)

[64] "LinkedIn" is a social networking website.

[65] *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir. 1977).

[66] *Id.*

Page 14 of 18

This issue was first raised during the trial, and I questioned the juror about it.[67] Based on his responses, I determined that no misconduct occurred.[68] I concluded that even if the juror had conducted a brief search about DeSmet, there was no evidence the juror was biased or that any prejudice occurred. Defendants offer nothing new to change my mind. They fail to explain how this could be so prejudicial as to warrant a new trial. They cite no authority and provide no analysis suggesting that this event somehow tainted the jury's verdict or otherwise warrants relief. Absent any evidence, authority, or analysis to the contrary, I cannot find that defendants were so prejudiced by the fact that a juror looked at DeSmet's LinkedIn profile that they deserve a new trial.

### F. Counsel's inappropriate comments during closing argument

Koval argues counsel for the Taddeos improperly violated the "golden rule" by stating:

> Would you buy a property if you (k)new the floors were overloaded? Would you buy a property if you didn't own the front entrance? Would you buy a property if the gate is fenced off? Of course not.[69]

"[A]ttorneys violate the 'golden rule' by asking the jurors to place themselves in the plaintiff's position."[70] But where a party fails to object to improper statements during closing argument, the objection is generally waived unless the misconduct

> amounted to "irreparable and fundamental error . . . that results in a substantial impairment of justice or denial of fundamental rights such that, but for the misconduct, the verdict would have been different." . . . [T]he party claiming misconduct must show "'that no other reasonable explanation for the verdict exists.'". . . This covers the rare occasion when the attorney misconduct "offsets the evidence adduced at trial in support of the verdict."[71]

---

[67] (Dkt. #178.)

[68] (*Id.*)

[69] (Dkt. #198 at 144.)

[70] *Grosjean v. Imperial Palace, Inc.,* 125 Nev. 349, 212 P.3d 1068 (2009).

[71] 125 Nev. at 364, 212 P.3d at 1079.

I agree that plaintiffs' counsel made inappropriate comments during closing arguments. Counsel attempted to put the jurors in the plaintiffs' shoes—a violation of the golden rule. Counsel referred to defendants as a "gang" and mentioned they were involved in "illegal hotel operations" (which had no relevance to this case). Defendants also inappropriately referred to the G.C. Wallace letter, intimating that the condominium was, in fact, defective.

But defendants failed to object to most of this misconduct. And even if they had, none of these remarks, alone or collectively, was so prejudicial that but for the remarks the verdict would have been different. The testimony and evidence presented during the trial reasonably could support the verdict. Looking "at the scope, nature, and quantity" of alleged misconduct,[72] I find that plaintiffs' counsel's misconduct does not warrant a new trial.

### G.   **Whether the punitive damages award was excessive**

Defendants argue that the jury's punitive damages award is excessive because Nevada Revised Statute § 42.005(1)(a) caps punitive damages at "[t]hree times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more."[73] Plaintiffs argue that this statute allows them to recover treble-punitive damages against each defendant. But the language of the statute ties the cap to "the amount of compensatory damages awarded to the plaintiff"; it does not refer to the amount awarded against any defendant. The caselaw confirms that the punitive damages cap applies to the amount of

---

[72] *Id.*

[73] Defendants also appear to argue that there was insufficient evidence to support the jury's punitive damages award. An award of punitive damages must be based upon "clear and convincing evidence . . . of oppression, fraud or malice, express or implied." NRS § 42.005(1). As explained above, there was sufficient evidence for the jury to find defendants liable for fraud. There was evidence both Koval and Invsco were aware of a serious potential defect in the condominium's floor, knew plaintiffs could not discover this information on their own (considering it was contained in a private report commissioned by Koval), and yet sold plaintiffs the condominium without mentioning the defect. Defendants have failed to establish that they did not commit fraud even under the heightened clear and convincing standard.

damages a plaintiff suffers. The Nevada Supreme Court has explained that punitive damages are properly calculated under NRS § 42.005 as "three times the untrebled amount of the . . . *damages*" the plaintiff suffers.[74]

Plaintiffs provide no authority or analysis for their position that they can treble a single award of compensatory damages against every defendant that is jointly and severally liable.[75] Here, the plaintiffs' compensatory damages award was $304,424.00. Thus, plaintiffs are entitled to a punitive damages award of $913,272.00, not the $2 million they were awarded.[76] Because punitive damages under Nevada law are awarded against each defendant severally in order to punish it[77]—and because the jury awarded punitive damages severally against each defendant in this case—the punitive damages award against each defendant must be reduced to $456,636.00.

Finally, the plaintiffs have moved, unopposed, to amend the judgment to add pre- and post-judgment interest.[78] Because I have adjusted their award, plaintiffs must supplement their brief with a new calculation of interest.[79]

/ / / /

---

[74] *Countrywide Home Loans, Inc. v. Thitchener,* 124 Nev. 725, 745, 192 P.3d 243, 256 (2008).

[75] *See* L.R. 7-2(d).

[76] Plaintiffs argue they should be given the option to have a new trial if I enter remittitur in this case. But plaintiffs have this option only if I reduce damages based on the jury's factual findings. When a damages verdict is excessive because of a pure legal error—as is the case here—plaintiffs have no right to a new trial. *New York, L.E. & W.R. Co. v. Estill*, 147 U.S. 591, (1893); *Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320, 1330 (11th Cir. 1999) (holding that there is no right to a new trial where a court reduces a damages judgment based on a legal error because, "[t]he Seventh Amendment is not offended by [the] reduction [where] the issue is one of law and not fact"); *Oyarzo v. Tuolumne Fire Dist.,* No. 1:11-CV-01271-SAB, 2014 WL 788321, at *9 (E.D. Cal. Feb. 25, 2014) (same).

[77] *See* N.R.S. § 42.005(1)(a), allowing punitive damages to be awarded against "a defendant" to punish them.

[78] (*See* Dkt. #200.)

[79] Invsco requested an extension of time to respond to the plaintiffs' motion for fees. (Dkt. #209.) This request is moot given that I denied the plaintiffs' motion in a prior order. (*See* Dkt. #251.)

## III. CONCLUSION

IT IS THEREFORE ORDERED that defendants' motions (Dkt. ##201, 202, 203, 209) are DENIED in part and GRANTED in part. They are denied in all respects except that plaintiffs' punitive damages awards will be reduced to $456,636.00 against Koval Flamingo LLC and $456,636.00 against American Invsco Corporation.

IT IS FURTHER ORDERED that plaintiffs' motion (Dkt. #200) is DENIED without prejudice.

IT IS FURTHER ORDERED that within 14 days of entry of this order, plaintiffs are to file a supplemental brief calculating appropriate interest on the revised amounts set forth above.

DATED this 20th day of July, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE